UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YIWU JIEYA E−COMMERCE CO. LTD., <br><br> Plaintiff, <br><br> v. <br><br> LIANG XU et al., <br><br> Defendants. | CASE NO. 2:25-cv-01595-LK <br><br> ORDER GRANTING MOTION FOR A TEMPORARY RESTRAINING ORDER |

This matter comes before the Court on Plaintiff Yiwu Jieya E-Commerce Co. Ltd.'s Motion for Entry of Temporary Restraining Order. Dkt. No. 15. Plaintiff seeks an order requiring Defendants Liang Xu and JUDYBRIDAL to withdraw their patent infringement complaints to Amazon and refrain from submitting further complaints about the same patent. Dkt. No. 15-2 at 1–2. Defendants oppose the motion. Dkt. No. 23. For the reasons set forth below, the Court grants the motion.

## I. BACKGROUND

Plaintiff operates a storefront on the Amazon.com marketplace through which it sells various consumer products, including the rotating desk organizers at issue in this case. Dkt. No.

ORDER GRANTING MOTION FOR A TEMPORARY RESTRAINING ORDER - 1

15 at 1. On August 6, 2025, "Amazon notified Plaintiff that a patent infringement complaint had been filed, identifying the rights owner as 'JUDYBRIDAL.'" Dkt. No. 14 at 8; *see also* Dkt. No. 14-8 (notification from Amazon of the complaint). That complaint alleged that Plaintiff's rotating desk organizers infringe U.S. Patent No. 12,274,337 B2 (the "'337 Patent"). Dkt. No. 14 at 2–3; *see also* Dkt. No. 14-2 (the '337 Patent). Plaintiff's desk organizers all share the same design, structure, and features, but each one is assigned a distinct Amazon Standard Identification Number ("ASIN") based on its color. Dkt. No. 14 at 5. Plaintiff contends that "Defendant Liang Xu is listed as the inventor and assignee of [the '337 Patent]" but "Amazon's infringement notice identified "JUDYBRIDAL" as the "rights owner of the '337 Patent." *Id.* at 3–4.

The same day Amazon notified Plaintiff of the complaint, it removed the accused products from Plaintiff's storefront, and the products have remained removed. *Id.* at 8. Plaintiff sought reinstatement of its products through Amazon's internal appeal process—including by filing appeals on August 8, 22, and 29—but its efforts were unsuccessful. Dkt. No. 15 at 15.[1]

Meanwhile, on August 20, 2025, Plaintiff filed a complaint with this Court. Dkt. No. 1. On September 9, Plaintiff filed an amended complaint, Dkt. No. 14, and this motion for a TRO, Dkt. No. 15. The amended complaint asserts claims for (1) declaratory judgment of patent invalidity and unenforceability, (2) declaratory judgment of non-infringement, (3) tortious interference with contractual relations, (4) violation of the Washington Patent Troll Prevention Act, ("PTPA"), Section 19.350 et seq. of the Revised Code of Washington, (5) violation of the Washington Consumer Protection Act, ("CPA"), Section 19.86 *et seq.* of the Revised Code of Washington,

---

[1] Plaintiff contends that the takedown notice "warn[ed] that violations remain for 180 days and may result in account deactivation," Dkt. No. 24 at 3, but its deactivation contention is not supported by the current record. The takedown notice states that "[l]eaving this or other policy violations *unaddressed* may result in account deactivation." Dkt. No. 14-8 at 3 (emphasis added). The parties' briefs do not address whether an account could be deactivated if a seller unsuccessfully contests a complaint. Amazon's "Account health FAQ" page states generally that when there are issues, Amazon "may take action on [the seller's] account" and that such actions "vary and may include, but are not limited to, listing or account deactivation." Dkt. No. 15-10 at 3–4.

(6) "Attempted Monopolization (15 U.S.C. § 2) Walker Process Sherman Act Violation," and (7) "Sham Enforcement/Anticompetitive Conduct." Dkt. No. 14 at 9–17 (citation modified). The complaint requests, among other relief, an order declaring that the '337 Patent is invalid and unenforceable, declaring that the "Accused Products do not infringe any valid and enforceable claim of the '337 Patent," finding that Defendants violated the statutes listed above, and awarding injunctive and monetary relief. *Id.* at 17–19. On September 5, 2025, Plaintiff's counsel requested that Defendants withdraw their Amazon complaint, but "Defendants nevertheless proceeded, on September 8, 2025, to file an additional complaint targeting another identical product of Plaintiff[.]" Dkt. No. 15 at 2; *see also* Dkt. No. 15-13 (September 9, 2025 notification from Amazon of the additional complaint).[2]

On September 10, the Court issued an order stating that Plaintiff had not shown that it was entitled to emergency relief without giving Defendants an opportunity to respond, and thus ordered Defendants to respond by September 15, 2025. Dkt. No. 20. Defendants filed a timely response, Dkt. No. 23, and Plaintiff filed a reply, Dkt. No. 24.

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 65 empowers the court to issue a temporary restraining order ("TRO"). Fed. R. Civ. P. 65(b). Like a preliminary injunction, a TRO is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (the standards applicable to TROs and preliminary injunctions are "substantially identical"). The Court will not "mechanically" grant an injunction for every violation of law. *Weinberger v. Romero-Barcelo*, 456

---

[2] The products at issue are ASINs B0C5M4FXD3, B0C8C6ZFXW, B0CXM6G39D, B0CJ4VR1DK, B0C58QHVHZ, B0C58QSJPV, B0DG8L177D, and B0C58MCR4C (collectively, the "Accused Products"). Dkt. No. 15 at 1–2.

U.S. 305, 313 (1982). Instead, plaintiffs seeking a TRO must establish that (1) they are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at 20. The mere "possibility" of irreparable harm is insufficient; instead, the moving party must "demonstrate that irreparable injury is likely in the absence of an injunction." *Id.* at 22.

The Ninth Circuit employs a "sliding scale" approach, under which the four elements are balanced "so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). For example, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a [TRO], so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (citation modified). The moving party bears the burden of persuasion and must make a clear showing that it is entitled to such relief. *Winter*, 555 U.S. at 22.

**B.    Plaintiff is Entitled to a Temporary Restraining Order**

In their response brief, Defendants contest only the irreparable harm element. *See generally* Dkt. No. 23. Still, the Court considers whether Plaintiff has met its burden on all four elements.

   1.   <u>Likelihood of Success on the Merits</u>

Plaintiff contends that it is likely to succeed on the merits of its claim that the '337 Patent is invalid under 35 U.S.C. §§ 102 and/or 103 because the Accused Products "were publicly sold on Amazon.com as early as May through August 2023," which was "more than one year before the '337 Patent's filing date." Dkt. No. 15 at 6.

Design patents are presumed to be valid. 35 U.S.C. § 282(a). That presumption of validity exists "during preliminary injunction proceedings as at other stages of litigation." *Titan Tire Corp.*

*v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009).[3] A party seeking to invalidate a patent bears the burden of proving invalidity by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).

Under 35 U.S.C. § 102, an inventor is not entitled to a patent if "the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention," subject to certain exceptions. 35 U.S.C. § 102(a)(1); *see also Cixishihualongdianziyouxiangongsi v. Seven Sparta Corp.*, No. 2:25-cv-01313-JHC, 2025 WL 2052632, at *2 (W.D. Wash. July 22, 2025). Section 102 establishes that "a person can not patent what was already known to others." *Woodland Tr. v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998); *see also Abbott Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999) (explaining that a commercial sale of an invention by a third-party is sufficient to invalidate a patent). Furthermore, 35 U.S.C. § 103 prevents an inventor from obtaining a patent for a claimed invention "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." In determining whether a claimed invention is obvious in light of prior art, courts should consider (1) the scope and content of analogous prior art within the knowledge of an ordinary designer in the field of the design; (2) the differences in visual appearance between the prior art and the design claim at issue from the perspective of an ordinary designer in the field; (3) the level of ordinary skill in the pertinent art, and (4) "where a primary reference alone does not render the claimed design obvious . . . some record-supported reason

---

[3] "The Court is guided by the law of the United States Court of Appeals for the Federal Circuit when a preliminary injunction rests on substantive patent law issues." *EZ-Ink, Inc. v. Brother Indus., Ltd.*, No. 2:21cv564, 2021 WL 7909312, at *4 (E.D. Va. Dec. 9, 2021) (citing *Hybritech Inc. v. Abbott Lab'ys*, 849 F.2d 1446, 1451 n.12 (Fed. Cir. 1988)).

ORDER GRANTING MOTION FOR A TEMPORARY RESTRAINING ORDER - 5

(without hindsight) that an ordinary designer in the field of the article of manufacture would have modified the primary reference with the feature(s) from the secondary reference(s) to create the same overall appearance as the claimed design." *LKQ Corp. v. GM Glob. Tech. Operations LLC*, 102 F.4th 1280, 1298–1299 (Fed. Cir. 2024). At the fourth step, any secondary indicia of nonobviousness—*e.g.*, commercial success, industry praise, or copying of the claimed design—must also be considered. *Id.* at 1300.

Plaintiff contends that the records it has filed "confirm that the invention claimed in the '337 Patent was on sale in the United States more than one year before the patent's September 19, 2024 filing date." Dkt. No. 15 at 9; *see also id.* at 6–8. Plaintiff has provided evidence demonstrating that the Accused Products were offered for sale as early as May 2023. *See* Dkt. No. 15-5 (order summary for product ASIN B0C8C6ZFXW, purchased on August 2, 2023); Dkt. No. 15-6 (order summary for product ASIN B0C58QSJPV, purchased August 1, 2023); Dkt. No. 15-7 (product ASIN B0C58QHVHZ, purchased July 31, 2023); Dkt. Nos. 15-8–15-9 (shipment summary for product ASIN B0C58MCR4C, listed for sale and shipped to Amazon Fulfillment Center SCK4 in May 2023); *see also* Dkt. No. 15-1 at 1–2 (declaring that Plaintiff began selling seven of the Accused Products on Amazon in May 2023 and "these products have been continuously offered and sold to customers in the United States since that time"). This evidence shows that the Accused Products were publicly available well before Defendants' claimed invention's filing date.[4] Defendants do not dispute Plaintiff's argument that, consequently, "if the claims of the '337 Patent read on [the] Accused Products, they are invalid; if they do not, Plaintiff does not infringe." Dkt. No. 14 at 3; *see also* Dkt. No. 15 at 9–11; *see generally* Dkt. No. 23.[5]

---

[4] Plaintiff contends, and Defendants do not dispute, that the Accused Products all share the same design, structure, and features except their color. Dkt. No. 14 at 5; *see generally* Dkt. No. 23.

[5] Nor do Defendants dispute Plaintiff's allegations that "published prior art references—including at least Wang

1    In light of these undisputed facts, the Court finds that Plaintiff has shown that it is likely to succeed on the merits of either its invalidity or non-infringement claim. Dkt. No. 14 at 9–11.

### 2. Likelihood of Irreparable Harm in the Absence of Preliminary Relief

To obtain a TRO, the plaintiff must show more than the possibility of irreparable injury; it must demonstrate that irreparable injury is likely and imminent in the absence of preliminary relief. *Winter*, 555 U.S. at 22. There must also be a "sufficient causal connection" between the alleged irreparable harm and the activity to be enjoined, and showing that "the requested injunction would forestall" the irreparable harm qualifies as such a connection. *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981–82 (9th Cir. 2011). In the context of a TRO, "monetary injury is not normally considered irreparable[.]" *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022) (citation modified); *see also Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm."). However, "[r]eputational harm and loss of goodwill can be irreparable harm . . . [as] can threatened loss of prospective customers." *Beyond Blond Prods. v. Heldman*, 479 F. Supp. 3d 874, 888 (C.D. Cal. 2020).

Here, Plaintiff alleges that it will suffer irreparable harm absent a TRO because "Amazon has deactivated Plaintiff's best-selling product listings—effectively granting Defendants a de facto injunction without judicial oversight." Dkt. No. 15 at 11. It further states that its "loss of access to the U.S. marketplace, disruption of advertising efforts, damaged reputation, and lost customer relationships are all intangible harms that cannot be compensated through monetary damages alone." *Id.* In support, Plaintiff has filed a declaration from Chengcheng Zheng, its Operations

---

(CN219133695U, published June 6, 2023), Song (CN218577380U, published March 7, 2023), and Zhang (CN201211808Y, published March 25, 2009)—disclose pen holders with annular ball races, rolling interfaces, and retention structures substantially similar to those recited in the '337 Patent such that they "render[] the asserted claims invalid under 35 U.S.C. § 103." Dkt. No. 14 at 9–10; *see also* Dkt. No. 15 at 9; Dkt. No. 14-9 (Wang, CN219133695U); Dkt. No. 14-10 (Song, CN218577380U); Dkt. No. 14-11 (Zhang, CN201211808Y); *see generally* Dkt. No. 23.

Manager, stating that Plaintiff "derives 100% of its revenue from sales on Amazon," with the Accused Products accounting for approximately 25% of its total sales revenue on its Amazon storefront. Dkt. No. 15-1 at 1–2. If Plaintiff is unable to continue selling the Accused Products, the company "will likely be forced to eliminate approximately twelve positions, resulting in job losses for those employees." *Id.* Zheng also states that Amazon's removal "has caused a complete halt in sales for the Accused Products, and [Plaintiff has] lost nearly all access to customers for these products." *Id.* Consequently, the removal "has disrupted [its] search rankings, visibility, and traffic, which has had an immediate and negative impact on [its] business." *Id.* at 2–3. The delisting "has also caused irreparable harm to [its] brand reputation and goodwill built over time" "as the [product[s'] Amazon rankings continue to drop." *Id.* at 3. The loss of rankings and customers can become increasingly difficult to restore "in Amazon's competitive ecosystem[.]" *Id.*

Zheng further states that Amazon is scheduled to remove and dispose of all of the Accused Products in its inventory on October 5, 2025, and the market value of that inventory is approximately $200,000. *Id.* at 2. Zheng avers that the combination of the delisting and the destruction of inventory will cause irreparable harm because it will "require [Plaintiff] to relaunch the product under new ASINs, incurring unrecoverable costs such as advertising, listing optimization, and appeal-related expenses." *Id.* at 3.

Defendants respond that Plaintiff has not provided any "concrete evidence of loss of goodwill or reputational harms beyond a few conclusory statements in a declaration[.]" Dkt. No. 23 at 3. True enough, "conclusory affidavits are insufficient to demonstrate irreparable harm." *Medcursor Inc.*, 543 F. Supp. 3d at 870. However, Plaintiff has provided more than conclusory statements. Plaintiff has provided a sworn declaration from its Operations Manager attesting to the volume of sales of the Accused Products on Amazon and the tangible consequences from the cessation of those sales (including lost goodwill, lost customer access, and lost marketplace

visibility and rankings). *See* Dkt. No. 15-1 at 2–4. And because of "Amazon's competitive ecosystem," these customers "are extremely difficult to win back once lost[.]" *Id.* at 3–4. These losses are sufficient to demonstrate irreparable harm. *See, e.g.*, *Beyond Blond Prods.*, 479 F. Supp. 3d at 887 (noting that "loss of goodwill can be irreparable harm," and "[s]o can threatened loss of prospective customers"); *Verizon Serv. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310 (Fed. Cir. 2007) (irreparable harm can include "lost opportunities to sell other services to the lost customers"); *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) ("Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.").[6]

Defendants also assert that Plaintiff is selling the same products in six other colors, which "significantly alleviates any financial harm that Plaintiff alleges and makes it highly unlikely that they will go out of business or 'be forced to eliminate approximately twelve positions.'" Dkt. No. 23 at 4–5 (quoting Dkt. No. 15-1 at 2); *see also EZ-Ink, Inc.*, 2021 WL 7909312 at *11 (finding that plaintiff had failed to show irreparable harm from defendant's Amazon takedown requests because plaintiffs "continue[d] to enjoy proceeds, rankings, and customer goodwill from selling products identical or similar to the fourteen delisted products at issue in this case"). But here, Plaintiff has provided evidence that it will suffer irreparable harm despite its continued sales of similar products. Specifically, the Accused Products account for "approximately 25% of the total sales revenue of [Plaintiff's] Amazon storefront," and the inability to sell its "best-selling

---

[6] Defendants argue that one type of specific harm alleged in *Medcursor*—the loss of a "previously held first-page status," 543 F. Supp. 3d at 879—is not alleged here. Dkt. No. 23 at 6. However, the declaration is sufficiently specific under the circumstances, *see. e.g.*, *Cixishihualongdianziyouxiangongsi*, 2025 WL 2052632, at *2–3 (finding irreparable harm under similar circumstances), particularly because Plaintiff has made such a strong showing on the merits, which offsets any weakness in its showing of irreparable harm under the sliding scale approach, *see, e.g.*, *Dai*, 2025 WL 1726475, at *8–9. Moreover, the other type of irreparable harm found in *Medcursor* is present here: the "product delisting, if left unchecked, will likely result in nonquantifiable damages relating to lost business opportunities on Amazon." 543 F. Supp. 3d at 879; *see also* Dkt. No. 15-1 at 2–4.

ORDER GRANTING MOTION FOR A TEMPORARY RESTRAINING ORDER - 9

products" will likely result in loss of customers and goodwill, as set forth above, and require the company to eliminate approximately 12 positions. Dkt. No. 15-1 at 2; Dkt. No. 15 at 11. Although Defendants are skeptical, *see* Dkt. No. 23 at 4–5, they have not countered Zheng's sworn declaration regarding the potential loss of customers and goodwill. *See, e.g.*, *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1381 (Fed. Cir. 2006) (affirming the district court's grant of a preliminary injunction when the patentee offered substantial evidence of irreparable harm stemming from the loss of goodwill and potential layoff of employees). Moreover, the fact that the "harm affects only a portion of [Plaintiff's] business says nothing about whether that harm can be rectified," that is, whether it is *irreparable*. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1152 (Fed. Cir. 2011). Here, Plaintiff has shown a likelihood of irreparable harm based on the potential loss of customers and goodwill.[7]

Plaintiff must also show a sufficiently strong causal nexus between the Defendants' conduct and the alleged harm. *See, e.g.*, *Apple Inc.*, 695 F.3d at 1376–1377. Plaintiff has met this burden too, showing that Amazon delisted its products as a result of Defendants' complaints. *See* Dkt. No. 15-1 at 2. Accordingly, Plaintiff has shown a likelihood of irreparable harm absent a TRO.

    3. <u>Balance of Equities</u>

Plaintiff argues that the balance of hardships tips in its favor because it seeks a narrow injunction to restore the status quo ante, it derives all of its revenue from sales on Amazon, and the takedown "has already caused, and will continue to cause, the loss of goodwill, customer relationships, product ranking, and business reputation." Dkt. No. 15 at 15. It contends that, in

---

[7] Because these issues are sufficient to demonstrate irreparable harm at this stage, the Court does not address Plaintiff's argument that it "has no viable recourse for damages against Defendants, who lack any accessible assets within this jurisdiction." Dkt. No. 15 at 14.

contrast to the harms it has incurred and will continue to face, granting the injunction will "impose[] minimal burden on Defendants" because their patent is invalid. *Id.* at 16. Moreover, even if Defendants prevail, they can seek monetary damages that will fully compensate them for any loss. *Id.* Defendants have not responded to this argument. *See generally* Dkt. No. 23.

In light of Defendants' non-opposition on this factor and Plaintiff's evidence of irreparable harm, the Court finds that "the balance of equities weighs in favor of ordering Defendants to retract their patent infringement notice[s] so Plaintiff's products may be relisted[.]" *Medcursor*, 543 F. Supp. 3d at 880. In addition, Defendants can be "compensated by damages" if they later prove infringement and overcome Plaintiff's invalidity contentions. *Id.* Accordingly, the Court finds that this factor weighs in Plaintiff's favor.

4. Public Interest

Plaintiff contends that an injunction is in the public interest because "Defendants cannot identify any legitimate public interest that would be harmed by temporarily withdrawing its Amazon infringement complaint[s] and restoring Plaintiff's ability to sell legitimate, non-infringing products," and, at the same time, "the public benefits when businesses are allowed to fairly compete in the marketplace, and when invalid or baseless intellectual property assertions are not used to suppress competition without judicial scrutiny." Dkt. No. 15 at 17. Again, the Court agrees with Plaintiff that the public interest factor weighs in its favor. Specifically, "[g]iven the ubiquity of Amazon shopping to the general public, the public has an interest in a full and fair online marketplace." *Medcursor*, 543 F. Supp. 3d at 880. Where, as here, "the moving party has demonstrated a likelihood of success on patent invalidity" or noninfringement, and "likely irreparable harm flowing from the inability to reach its customers on Amazon, the public interest favors preventing a competitor from using a seemingly innocuous intellectual property rights-

protection notice to effectively shut down a competitor's business." *Id.*; *see also Beyond Blond Prods.*, 479 F. Supp. 3d at 888.

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Entry of Temporary Restraining Order, Dkt. No. 15, and ORDERS as follows:

1. Defendants Liang Xu and JUDYBRIDAL, and JUDYBRIDAL's officers, agents, employees, and all persons acting in concert or participation with Defendants, are temporarily ENJOINED from submitting any further complaints to Amazon or any other third-party platform alleging that Plaintiff's rotating desk organizers (as described above) infringe the '337 Patent;

2. Defendants are ORDERED to retract their patent infringement complaints based on the '337 Patent against Plaintiff's rotating desk organizers on the Amazon.com platform, including Complaint IDs 18039774501 and 18435665831, by no later than 24 hours from the date of this Order.

3. No security bond is required under Federal Rule of Civil Procedure 65(c) because there is no realistic likelihood of harm to the Defendants from enjoining their conduct under these circumstances. *See Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009).

4. Pursuant to Federal Rule of Civil Procedure 65(d)(2), this Order is binding on those persons who receive actual notice of this Order if those persons are officers, agents, servants, employees, or attorneys of Defendants, or if they are acting in active concert or participation with Defendants.

5. Unless extended by the Court, this TRO expires 14 days from entry.

6. If Plaintiff intends to seek a preliminary injunction before the expiration of the TRO, it must file its motion by September 23, 2025. Associated briefing deadlines are as follows:

(a) September 23, 2025: Deadline for Plaintiff to file a motion for preliminary injunction of no more than 8,400 words.

(b) September 29, 2025: Deadline for Defendants' response of no more than 8,400 words.

(c) October 1, 2025 at 12:00 p.m.: Deadline for Plaintiff's reply of no more than 4,200 words.

Dated this 19th day of September, 2025.

*Lauren King*

Lauren King
United States District Judge

ORDER GRANTING MOTION FOR A TEMPORARY RESTRAINING ORDER - 13